WILLIAM H. CLARK v. NETTIE F. McCORMICK et al.

and

SAME v. SAME,

and

SAME v. NATIONAL MALLEABLE CASTINGS CO. et al.

*Opinion filed June 18, 1898.*

1. DEDICATION—*intention to dedicate streets need not be manifested by oral or written declarations.* The intention of the proprietor of a platted subdivision to dedicate strips as public streets need not be manifested by oral or written declarations, but may be established by the survey and plat, if it sufficiently appears from the face of the plat or in any way by which such intention may be manifested.

2. SAME—*legal title to street remains in owner on common law dedication.* Where the statutory requirements in platting a subdivision have not been complied with, and the city has not accepted the subdivision as an addition to the city, nor the streets, designated on the plat, as public streets, the dedication is not a statutory one, but may be good as at common law, the legal title to the ground set apart for streets remaining in the owner of the plat, or his grantees, in trust for the public.

3. SAME—*plat owner's title in street is not an absolute fee simple.* The legal title remaining in the owner of a platted subdivision in ground set apart by a common law dedication for streets is not an absolute fee, but a fee burdened with the offer of dedication, and one purchasing a lot or block with reference to the plat takes the grantor's title to one-half the street adjoining the property, subject to all the rights of other owners of lots or blocks in the subdivisions to have the same remain open for public use.

4. SAME—*statutory proceeding to vacate dedication is not applicable to common law dedication.* The statutory provision for vacating a dedication attended with all the statutory formalities and accepted by the city does not apply to a common law dedication, so as to give to individual lot or block owners in a subdivision the right to withdraw the offered dedication as to parts of the street upon which their property abuts.

5. SAME—*part of owners of subdivision cannot close street as against others.* Each purchaser of a lot or block in a subdivision containing streets dedicated as at common law is presumed to have bought in view of the system of streets and ways designed by the owner of the plat to afford access to all parts of the platted ground, not merely for such purchasers but for all other owners; and a part of the owners of lots or blocks cannot withdraw the offer of dedica-

tion of the part of the street adjoining their property, as against the right of other owners to have the street remain open.

6. CONTINUANCES—*when denial of motion for continuance and re-reference to master is proper.* The denial of a motion for continuance and re-reference to the master to permit the cross-complainant to introduce a newly discovered plat in evidence, which he claimed showed the proprietor's intention not to dedicate the whole of a certain strip as a street, is not error, where the newly discovered plat covers but one block of the subdivision, a plat of which was already in evidence, and which, if made by the proprietor at all, was made after he had sold lots with reference to the original plat.

CARTER, C. J., dissenting.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

THOMPSON, DELAMATER & CLARK, and WILLIAM H. WILKINS, for plaintiff in error.

W. T. UNDERWOOD, for defendants in error Nettie F. McCormick and Cyrus H. McCormick, Jr.

WILSON, MOORE & McILVAINE, (JOHN P. WILSON, of counsel,) for defendant in error the National Malleable Castings Company.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On the fourth day of January, 1871, one S. J. Walker, the owner of the north-east quarter of section 25, township 39, north, range 13, east of the third principal meridian, subdivided the said tract into blocks and streets, and made, and caused to be recorded in the office of the recorder of deeds within and for the county of Cook, a plat showing such subdivision. The record of the plat was destroyed in the great fire in Chicago in October, 1871. A decree was entered, in a proceeding brought for the purpose, restoring the record of the plat, but as restored it did not appear the plat had been acknowledged by the maker, or that in other respects it had been executed and framed as required by the statute. It is con-

ceded, and seems to be indisputable, the plat as restored is insufficient to constitute a statutory dedication of the streets. Said plat, as restored, is as follows:

The proprietor of the plat sold and conveyed to different persons and corporations the blocks of land appearing on the plat, designating and describing them in the deeds of conveyance according to their numbers as shown on the plat. The title to block 2 passed by *mesne* conveyances to Nettie F. McCormick and Cyrus H. McCormick, Jr., in their capacity as trustees for Harold McCormick under the last will and testament of Cyrus H. McCormick; the title to block 7 of said subdivision passed to and became vested in the same trustees under the will of said Cyrus H. McCormick, deceased, as trustees for Anita McCormick Blaine; and the title to block

10, as platted in said subdivision, by like *mesne* conveyances passed to and became vested in the National Malleable Castings Company. The respective petitioners each held a portion of the east part of each of the said blocks by a different chain of title than that by which they became seized of the other portions of the block, and each claimed to own the strip of land intervening between the east line of the blocks and the west line of the right of way of the railroad shown on the plat. Various deeds and other instruments affecting, or purporting to affect, the title to the said parts of blocks 2, 7 and 10, and said strip between the block lines and the right of way, were destroyed by said fire in Chicago, in 1871.

On the 17th day of May, 1894, the said trustees and the said National Malleable Castings Company, so owning said blocks 2, 7 and 10 in the said subdivision, filed separate petitions under the Burnt Records act, for the purpose of obtaining decrees establishing and confirming their respective titles to the said portions of the east parts of the said blocks, and also establishing and declaring title in each of them to the strip of land lying between the east line of the said block by them respectively owned and the west line of the right of way of the said railroad. The plaintiff in error, William H. Clark, the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company, and the city of Chicago, were made parties defendant to each of said petitions, and filed answers thereto. The plaintiff in error also filed a cross-petition to each of the said petitions, in which he contested the claim of the said petitioners, and each of them, to the strip of ground outside the limits of the respective blocks and lying between the said blocks and the said right of way, and asserted that the title to the said strips of ground between the block lines and the right of way had become vested in him, and prayed that a decree might be entered establishing his title thereto. The causes were heard, and a decree rendered in each case awarding

the petitioner in each case relief according to the prayer of the petition. The plaintiff in error prosecuted a writ of error out of this court, and brought the record in each case before us for review. The cases involve precisely the same questions, and were for that reason consolidated in this court and submitted together for decision.

Prior to the subdivision of the tract by Walker, the then owner, a former owner, one George S. Robbins, who also owned another tract of land immediately north thereof, executed and delivered to the Chicago and Great Eastern Railway Company a deed conveying to the said railway company, for a right of way, a strip of land 60 feet in width, running from north to south through the said tract. The center line of the said strip so conveyed for a right of way intersected the north line of the said tract subdivided by the said Walker, at a point 654.3 feet west of the east line of said tract. The title to this right of way passed by *mesne* conveyances to the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company. The location of this right of way is indicated on the plat hereinbefore set out. It was proven that in surveying and establishing the boundary lines of blocks 1, 8 and 9 of the said subdivision, the westerly lines of said blocks were located a distance of 10 feet over and upon the said right of way, and a strip marked "Railroad right of way or street," 66 feet in width, was laid out and platted immediately adjoining said blocks on the west. The effect of this was to locate the westerly boundary line of said strip marked on the said plat "Railroad right of way or street" 16.7 feet west of the westerly line of the right of way. It is this strip, 16.7 feet in width, adjoining each of said blocks 2, 7 and 10 on the east, that is the subject matter of contention in these causes.

It was alleged in each of the original petitions, and in each of the cross-petitions filed by plaintiff in error, that the said strip marked "Railroad right of way or street" had never been occupied and used by the public

or the city of Chicago for street or other public purposes; and in each of said cross-petitions it was averred the proprietor of the said subdivision never dedicated or offered to dedicate the said strip in question to the public or to the city of Chicago for public use, but, on the contrary, reserved the said strip (except that portion formerly conveyed for said right of way) to his own private use and benefit, while it is alleged in each of the original petitions that the offer of the proprietor of the said plat to dedicate the said strip (except the said right of way) was never accepted by the city of Chicago or by the public.

After the plat had been executed and recorded, and after the greater number of the blocks had been sold, the strips of ground in controversy were levied upon and sold by virtue of process issued upon certain judgments and a decree which had been entered against the said Walker, the proprietor of the plat, and, in default of redemption, deeds were made purporting to convey the title to said strips to the purchaser at said sale. The purchaser at such sale conveyed to plaintiff in error whatever title he thus received. The position of plaintiff in error is, that such conveyance to him vested in him the title to said strips between the block lines and the westerly line of the right of way.

On the 17th day of September, 1892, about twenty-one years after the execution and recording of the plat of said subdivision, the said petitioners, who then owned blocks 2, 7, 10 and 15 in said subdivision, filed in the office of the recorder of deeds of Cook county, and caused to be recorded on the deed records of the said office, an instrument in writing by the said parties duly signed and sealed, in which they declared that the offer made by the proprietor of the plat to dedicate the said strip marked "Railroad right of way or street" to the uses of a public street had never been accepted by the public or the city, and was by them withdrawn and was no longer in force, and declaring it to be their intention to hereafter devote

said strip to the private use of the respective parties so signing said declaration. The position of the petitioners below is, that the fee in the strip to the center of the street passed by operation of law to the owners of the blocks abutting thereon, subject to the offer of dedication, and that as they had acquired the title to all of the blocks abutting on the west side of the said strip which the proprietor of the plat offered to dedicate as a street, and as such dedication had not, as they claimed, been accepted by the public or the city, it was within their power to withdraw the offer of dedication, and that having so withdrawn said offer they themselves became possessed in fee of the title to the center of the said proposed, but now, as they alleged, abandoned, street.

The circuit court denied the contention of the plaintiff in error, (the cross-petitioner,) and accepted that of the defendants in error, (the petitioners below,) and entered a decree confirming and establishing the title of the said petitioners to the strip in question.

We think it evident from the face of the plat that the original proprietor of the subdivision intended to set apart the strips of ground 66 feet in width, running north and south between the blocks, for the use of the public, as streets or ways of ingress and egress. It was not necessary that a declaration, either oral or written, should be established in order to show it was the intention of the proprietor to dedicate the strips to such uses. Such intention may be established in any conceivable way by which it may be made manifest. A survey and plat alone are sufficient to establish a dedication, if it is evident from the face of the plat it was the intention of the proprietor to set apart certain grounds for public use. *Smith* v. *Town of Flora,* 64 Ill. 93; *Godfrey* v. *City of Alton,* 12 id. 29; *Maywood Co.* v. *Village of Maywood,* 118 id. 61.

It not appearing that all the requirements of the statute were observed in making the plat, and it not appearing that the city of Chicago had accepted the plat as

an addition to the city or the streets therein marked as public ways of the city, the dedication was not a statutory one, and the title in fee to the strips intended to be dedicated as streets did not vest in the city, but remained in the original proprietor. The dedication was, however, good as a common law dedication, and the legal title in the grounds so set apart as for streets remained in the original owner. (*Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet,* 79 Ill. 25; *Thomsen* v. *McCormick,* 136 id. 135.) The title thus remaining in a proprietor of such a plat is not an absolute fee, but is a fee burdened with the offer of dedication, and it is retained only so long as the proprietor goes no further than to hold out an offer to dedicate. If he shall sell lots or blocks laid out and shown upon the plat according to their descriptions or numbers given by the plat, the title resting in him in fee to one-half the street next adjoining the lot or block so sold passes, by operation of law, to the purchaser of such lot or block. (*Thomsen* v. *McCormick, supra; Hamilton* v. *Chicago, Burlington and Quincy Railroad Co.* 124 Ill. 235; *Rusk* v. *Berlin,* 173 id. 634; *Cihak* v. *Klekr,* 117 id. 643; *Henderson* v. *Hatterman,* 146 id. 555.) Had the plat been executed in conformity with the statute, the fee title to the streets would have vested in the city in trust for the public. Not having been so executed, the fee remained in the proprietor, in trust for the lot owners and the public.

Without conceding that the title to streets and ways resting in the proprietor of such a plat, or in the owner of lots or blocks therein, can be made the subject of levy and sale by virtue of a judgment or decree against such proprietor or owner, yet as it appeared the original proprietor of the plat had conveyed all of the blocks here involved before the lien of the judgments and decree upon which the claim of title of the plaintiff in error to the strips could have attached, it is manifest the plaintiff in error could not take any title in said strips by virtue of such sales thereof made by authority of said judgments

and decree, for the reason that the title of the judgment and decree debtor, as we have seen, passed, by operation of law, to the purchasers of the blocks before becoming subject to the liens of the judgments or decree. The decree of the circuit court that the plaintiff in error was not seized of title to the strips of land in question was therefore clearly correct, and must be affirmed. But we think the court erred in establishing and confirming title in the petitioners in and to said strips. Being seized of the title of their blocks, respectively, the law devolved upon the petitioners title to the center of the streets upon which said blocks abutted, which in this instance would include the strips in question. But the title so vested in the petitioners by operation of law is not an absolute fee in the premises, but is a title resting in them by virtue of their ownership of the abutting blocks, subject to the rights of all other owners of blocks in the subdivision.

The following quotation from the opinion in the case of *Zearing* v. *Raber*, 74 Ill. 409, is here in point (p. 411): "If one owning land exhibit a map of it, on which a street is defined though not as yet open, and building lots be sold by him with reference to a front or rear on that street, or lots he conveyed being described as by streets, (*Schenley* v. *Commonwealth*, 36 Pa. St. 62 and id. 29,) this is an immediate dedication of that street, and the purchasers of lots have a right to have that street thrown open forever. (*Wyman* v. *Mayor*, 11 Wend. 487; *Livingston* v. *Mayor*, 8 id. 85; and see *Matter of Twenty-ninth and Thirty-ninth Streets*, 1 Hill, (N. Y.) 189, 192.) And this principle is not limited in its application to the single street on which such lots may be situated. If the owner of land lays out and establishes a town and makes and exhibits a plan of the town, with various plats of spare ground, such as streets, alleys, quays, etc., and sells the lots with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege and advantage which the plan represents as belonging to them

as a part of the town, or to their owners as citizens of the town. And the right thus passing to the purchasers is not the mere right that such purchasers may use these streets, or other public places, according to their appropriate purposes, but a right vesting in the purchasers that all persons whatever, as their occasion may require or invite, may so use them. In other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers that the streets and other public places, indicated as such upon the plan, shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use. *Rowan's Exr.* v. *Town of Portland,* 8 B. Mon. 232, 237. See, also, *Bowling Green* v. *Hobsen,* 3 B. Mon. 478; *Huber* v. *Gazley,* 18 Ohio, 18; *Dummer* v. *Doe ex dem. Selectmen of Jersey City,* Spencer, 86, 106; *Wickliffe* v. *City of Lexington,* 11 B. Mon. 163."

In *Earll* v. *City of Chicago,* 136 Ill. 277, the true doctrine was declared to be, (p. 285,) "that if the owner of land exhibits a map or plan of a town, or addition platted thereon, and on which a street is defined, and sells lots abutting on such street and with clear reference to the plat exhibited, then the purchasers of such lots have a right to have that street remain open forever; and such right is not a mere right that the purchaser may use that street, but is a right vesting in the purchasers that all persons may use it,—that the sale and conveyance of lots according to the plat imply a grant or covenant to the purchasers of lots, and their grantees, that the public street indicated upon the plat shall be forever open to the use of the public as a public highway, free from all claim or interference of the proprietor, or those claiming under him, inconsistent with such use, and that the owner, and all claiming under him, will be perpetually estopped from denying the existence of the street." The same principle is referred to with approval in *Prouty* v. *Tilden,* 164 Ill. 163.

The petitioners, and each and every other owner of a block or blocks in the subdivision, holds title to the center of each street upon which the block or blocks abut, but each and all of said owners have also a like general interest and right in all the streets, and no one owner may assume absolute and exclusive ownership or control of the one-half of the street upon which his premises may abut. But it is urged in behalf of the petitioners that the offer to dedicate the strips in question to the public was withdrawn by them, and thereupon the title to said strips, which passed to them by operation of law, as owners of the blocks abutting thereon, was relieved of the burden of the offer of dedication and became an absolute title in fee.

When a plat of lots, blocks, streets and alleys is executed in compliance with the statute and is accepted by a city or village, it may be vacated by proceedings in conformity with the provisions of the statute, for such statute is framed with the view of protecting the rights of all interested; and, moreover, the purchaser of a lot or block in such a plat buys in view of the statutory provisions for vacating the plat. But this is a common law dedication, and the right does not attach to each individual block owner to withdraw the offer as to the part of the street upon which his lot abuts. Each purchaser of a block in the subdivision is presumed to have bought in view of the system of streets and ways designed by the proprietor of the plat to provide means of ingress and egress to and from all parts of the platted ground, not only for the use of the owners and occupants of the lots or blocks, but all who might desire to pass along such streets and ways. The arrangement of streets and ways formed a part of the consideration of the purchase of each block or part thereof, not only as between the original proprietor of the plat and those who purchase from him, but also as between all subsequent vendors and vendees. The original proprietor sold to his vendee

the rights and privileges of the streets, and each subsequent vendor passed such rights to his vendee. The law implies mutual agreements between all such parties that the streets shall always remain open for use as platted. It was not, therefore, within the power of the petitioners, as owners of the blocks along the west side of the street in question, (being but a portion of the blocks in the subdivision,) to withdraw the dedication of the streets as against the private rights of any other owners of blocks or parts of blocks in the subdivision. *Zearing* v. *Raber, supra; Cihak* v. *Klekr, supra; Earll* v. *City of Chicago, supra; Town of Lake View* v. *LeBahn,* 120 Ill. 92.

The declaration filed and recorded by the petitioners, in which they assumed to declare the dedication at an end and that the absolute and exclusive title in fee rested in them, was without legal effect. The fee to the strips in question is attached to the fee in the blocks upon which the streets abut, and rests in the owners of such blocks. It is not a title vesting in the owners of the blocks the ownership of the strips as separate, independent property, which may be detached from and sold distinct from the blocks, but it passes to any subsequent holder of the blocks. The decree, to the effect that the petitioners are vested with an absolute fee title in the strips, is erroneous and must be reversed. The decree confirming and establishing the title to the blocks had the legal effect to vest in the petitioners the full interest and title they respectively have in these strips, and no further declaration of title should have been made than that the petitioners were seized of the title in fee to the portions of blocks respectively owned by them.

The plaintiff in error, after the master to whom the cause had been referred had filed his report, entered his motion to continue the cause and re-refer the same to the master in order that he might produce certain alleged newly discovered testimony, but the court overruled the motion, and such ruling of the court is assigned as for

error. This alleged newly discovered evidence was deemed material by the plaintiff in error, because, as he insisted, it tended to show it was not the intention of the original proprietor of the plat to dedicate the strip marked on the restored plat "Railroad right of way or street," for street purposes. The evidence consisted of two other plats made by the same proprietor. The first of these was a plat of the subdivision of the tract of land lying immediately north of the tract covered by the subdivision involved in this cause, and the other was a plat of a subdivision made by the said proprietor of block 9 in the subdivision here involved.

The re-subdivision of block 9 was made some two years after the subdivision of the tract of which it is a part, and it is contended by the plaintiff in error that by this plat the proprietor showed that he claimed as his individual property the strips in question. We have examined the plat as preserved in the record and do not think it had any tendency to indicate that the proprietor claimed any individual interest in the strips in controversy. We find on the plat a line intended to represent the western boundary line of the right of way of the railroad and another line intended to represent the eastern line of block 10, with a space intervening between said lines, without anything in such space to indicate that it is not a part of the public street which we find from the original plat was laid out between said blocks 9 and 10. Moreover, it appeared from the stipulation entered into by the parties hereto that said proprietor of the plat in controversy and the plat subdividing block 9, after making the original plat and before subdividing said block 9, had sold the greater number of the blocks in the original subdivision. It was therefore beyond his power, by the subsequent subdivision of block 9, to change the streets created by the original plat, of which block 9 was a part.

It does not appear from the other plat, to secure the production of which a continuance was asked, (a copy of

which is preserved in the record,) when or by whom the same was made. It purports to show the location of certain lots, blocks and streets in another and different tract of land from that covered by the plat herein involved. We are unable to see it had any proper connection with the matter involved herein, and think the chancellor correctly refused to continue the cause in order to allow the production of these plats.

The decree of the court, so far as it purports to establish and confirm title in the petitioning trustees and the said National Malleable Castings Company in and to the strips of ground outside of the lines of the blocks by them respectively owned, must be and is reversed, otherwise the decree is affirmed. It is ordered the costs be paid as follows: The plaintiff in error shall pay one-half of the costs in each of the cases; the National Malleable Castings Company shall pay one-half the costs in the case to which it is a party; and the trustees, in the respective cases to which they are parties, shall, in the due course of the administration of their trust, pay one-half the costs.

*Decree affirmed in part.*

Mr. CHIEF JUSTICE CARTER, dissenting.